UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SANDRA DERRICK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3-06-1222 |
| ) | Judge Echols |
| METROPOLITAN GOVERNMENT OF ) | |
| NASHVILLE AND DAVIDSON ) | |
| COUNTY, TENNESSEE, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the Court is Defendant Metropolitan Government of Nashville and Davidson County, Tennessee's ("Metropolitan Government's") Motion for Summary Judgment (Docket Entry No. 16), to which Plaintiff Sandra Derrick has responded in opposition (Docket Entry No. 23), and Defendant has replied (Docket Entry No. 25).

### I. FACTS

This is an action in which Plaintiff claims her rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. 2601, *et seq.* were violated. She also claims retaliation for engaging in protected activity under Title VII of the Civil Rights Act of 1964, as amended, and the Tennessee Human Rights Act ("THRA"), T.C.A. § 4-21-101 *et seq.* and T.C.A. § 4-21-301 *et seq*.

The parties have identified only a handful of facts which are relevant to resolution of Defendant's Motion for Summary Judgment. Those facts relate to employment actions which occurred either around the time Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), or the time Plaintiff, and others, filed a putative

1

class action discrimination case in this Court. Because this matter is pending before the Court on Defendant's Motion for Summary Judgment, the facts must be construed in Plaintiff's favor and, so construed, are as follows.

Plaintiff, an African American female, has been employed by Metro Water Services ("Metro Water") since 1989.[1] During all relevant periods, her supervisor was Charles Boddie, an African American male.

The events giving rise to this lawsuit began in the latter part of 2003. On October 31, 2003, Plaintiff filed an EEOC complaint, charging race discrimination under Title VII and interference with her statutory rights under the FMLA. On September 23, 2003, approximately one month before the filing of that charge, Plaintiff received a performance evaluation from Boddie which indicated she was tardy for work on that day. However, as evidenced by an interoffice e-mail, Plaintiff was at her desk at least by 8:10, which is five minutes before the formal start of her workday. Nevertheless, even after receiving notice that Plaintiff was at work on time, Boddie refused to change the negative evaluation.

Also in September 2003, Robin Brown, the Metro Water Human Resources Manager, was informed by a Metro Water employee that while Plaintiff had used FMLA leave to take her son to speech therapy on a certain date, she had not in fact taken her son to therapy on that date. Though not given any specifics as to why an inquiry was being made, Plaintiff was asked to produce a note from her son's therapist indicating that her son had attended speech therapy on the date in question. Plaintiff consulted with her union representative who told her to furnish such a note. After Plaintiff produced a letter from her son's therapist about her son receiving therapy on the day in question and

---

[1]Metro Water is operated by Defendant Metropolitan Government.

after Metro Water made follow-up phone calls to the therapist's office, Plaintiff heard nothing more about the matter.

On October 6, 2003, Boddie completed a written evaluation of the Plaintiff that encompassed the period from January 16, 2003 through October 6, 2003. Although the evaluation was supposed to reflect the entire nine-month period, all of the negative written comments related to the months of August and September 2003, that is, the two month period prior to when Plaintiff filed her charge with the EEOC. Although Plaintiff complained to Boddie that she felt she was being singled out and discriminated against, Boddie took no action to alleviate Plaintiff's concerns.

On July 16, 2004, Plaintiff and seven others filed a putative class action on behalf of all former, current and future African American employees of Metro Water styled Grant *et al.* v. Metropolitan Government, Case No. 3-04-0630. Generally, plaintiffs in that action alleged discrimination in job assignments, promotions, pay, accommodations, discipline, and other terms and conditions of employment.

In a series of e-mail exchanges dated December 18-21, 2004, Ilene Cowden ("Cowden"), a Metro Water nurse, questioned Plaintiff about the propriety of taking FMLA leave to care for her autistic son when school was not in session. Plaintiff contacted Metro Human Resources and was told that so long as her son's doctor approved the time as FMLA leave, she was authorized to use the leave. Upon informing Cowden about Human Resource's response, the matter was resolved and Plaintiff was able to take leave when her son's school was not in session.

In the summer of 2005, Plaintiff was scheduled to take FMLA leave to care for her son. Boddie was aware that Plaintiff was intending to take three weeks of FMLA leave. The leave was scheduled to begin on August 1, 2005, and end on August 19, 2005.

3

Shortly before the leave was to begin, on July 19, 2005, Boddie required Plaintiff to turn in "time and motion" forms on a weekly basis. Plaintiff claims that the requested forms required her to account for every minute of her workday. Apparently no one else at Metro Water was required to submit such forms.

On July 29, 2005, the Friday before Plaintiff was to begin her FMLA leave, Boddie sent Plaintiff an email stating that he wanted to "discuss training." However, at the subsequent meeting, instead of simply discussing training, Boddie presented Plaintiff with a written evaluation. In five of the seven "General Performance Factors," Plaintiff's performance was rated "not acceptable."[2] Most of the criticisms related to problems Plaintiff was having in meeting deadlines and communicating with management about the status of assignments.[3] Among other criticisms, Boddie noted that Plaintiff failed to write down her daily duties in the "time and motion" forms and failed to give "any mention" of the status of these forms. However, Boddie had been informed by Plaintiff that she was discussing the matter of her having to complete "time and motion" forms with her union representative. Plaintiff asked Boddie why she was given the evaluation the day before going on FMLA leave but Boddie could not answer the question.

Based on these events, Plaintiff filed her Complaint under the FMLA and for retaliation under Title VII and the THRA. The present Motion for Summary Judgment followed.

---

[2] Notably, Plaintiff's attendance and observance of work hours were listed as acceptable.

[3] These were not new concerns. Similar concerns by management had been expressed in evaluations dating back to 2002.

4

## III. APPLICATION OF LAW

### A. FMLA Claim

The FMLA entitles an eligible employee up to twelve weeks of leave during any twelve month period if the employee has a "serious health condition that makes the employee unable to perform the functions of the position of such employee," or "in order to care for" a child who has a "serious health condition." 29 U.S.C. § 2612(a)(1)(C) &(D). "The term 'serious health condition' means an illness, injury, impairment, or physical or medical condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

The Sixth Circuit "recognizes two distinct theories for recovery under the FMLA: (1) the 'entitlement' or 'interference' theory arising from 29 U.S.C. § 2615(a)(1); and (2) the 'retaliation' or 'discrimination' theory arising from 29 U.S.C. § 2615(a)(2)." Hoge v. Honda of America, Inc., 384 F.3d 238, 244 (6th Cir. 2004). In this case, Plaintiff seeks to recover under the interference theory.

Metro Water claims it is entitled to judgment with respect to all but one of Plaintiff's allegations of interference under the FMLA because they are time-barred. In particular, Metro Water asserts Plaintiff's claim that she was falsely accused of abusing FMLA leave time and required to submit a FMLA leave form to justify the absence, as well as her claim regarding the Metro Water nurse questioning about FMLA leave for her son's school closing are time-barred.

Under the FMLA, an individual asserting a violation must bring her claim within two years of the event constituting the alleged violation, unless it can be shown that the employer acted

5

willfully in violating the employee's rights under the FMLA. 29 U.S.C. §§ 2617(c)(1) & (2). For willful violations, the statute of limitations is three years. 29 U.S.C. § 2617(c)(2).

While the FMLA does not define "willfully," courts have applied the Supreme Court's definition of "willful" for purposes of the Fair Labor Standards Act to FMLA cases. See, Samuels v. Kansas City Missouri School Dist., 437 F.3d 797, 803 (8th Cir. 2006). "Under that definition, the plaintiff must demonstrate the employer 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" Id. quoting, McLaugling v. Richland Shoe Co., 486 U.S. 128, 133 (1998). "Such a standard recognizes an employer's general knowledge about the statute's potential applicability, by itself, fails to demonstrate willfulness." Id.

Here, Plaintiff does not directly address Metro Water's contention that most of her allegations under the FMLA are time-barred, but instead focuses upon the one event which is not time-barred – the July 29, 2005 evaluation. Plaintiff does not argue that Metro Water's actions were willful, and the Court can find no basis for concluding that Metro Water showed a reckless disregard for whether its actions were prohibited by the FMLA. Accordingly, the Court will apply the two-year statute of limitations.

Plaintiff filed her suit on December 27, 2006. However, Plaintiff's contention that she was falsely accused of not taking her son to speech therapy and was required to submit an attendance form for that date occurred in September 2003. The questioning by the Metro Water nurse about whether FMLA leave could be taken when Plaintiff's son's school was not in session occurred between December 18 and 21, 2004. Thus, these allegations are time-barred and will not support

6

an FMLA interference claim.[4] This leaves for consideration Plaintiff's allegation that her receipt of Boddie's poor performance evaluation the day before she was scheduled to go on FMLA leave interfered with her FMLA rights.

"The interference provision of the Act, § 2615(a)(1), creates prescriptive rights" by providing "that 'it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in this subchapter.'" Hoge, 384 F.3d at 244 (quoting 29 U.S.C. § 2615(a)(1)). Up until very recently, to prevail on an interference claim in the Sixth Circuit, a Plaintiff was required to show that (1) she was an "eligible employee"; (2) the defendant was an "employer"; (3) the employee was entitled to leave under the Act; (4) the employee gave the employer notice of her intention to take leave; and (5) the employer denied the employee benefits to which she was entitled. Saroli v. Automation Modular Components, Inc., 405 F.3d 446, 454 (6th Cir. 2005). However, In Wysong v. Dow Chemical Co., 503 F.3d 441 (6th Cir. 2007), the Sixth Circuit had "no objection to rephrasing the fifth element of an interference claim as being that the employer has 'somehow used the leave against her and in an unlawful manner, as provided in either the statute *or* regulations.'" Id. 447, quoting, Bradley v. Mary Rutan Hosp., 322 F.Supp.2d 926, 940 (S.D. Ohio 2004)(italics in original). While, the court in Wysong found such language to be "different from the language used" in its earlier case of Cavin v. Honda of America Mfg,, Inc., 346

---

[4]In Tafelski v. Novartis Pharmaceuticals, 2007 WL 1017302 at *4 (E.D. Mich. 2007), the court noted that the Sixth Circuit has yet to decide whether a continuing violation theory applies to an FMLA interference claim. The court went on to observe, however, that even if the continuing violation theory is applicable in an FMLA interference case, it would not apply where the complained-of actions are discrete. Here, each of the matters about which Plaintiff complains involved discrete and separate acts.

7

F.3d 713, 719 (6th Cir. 2003), the rephrased language was not in conflict with Cavin because it merely "add[ed] depth" to that earlier decision.

In this case, there is no dispute that Plaintiff was an eligible employee, that the Metropolitan Government is an employer under the FMLA, that Plaintiff was entitled to leave to care for her autistic son, or that Plaintiff gave her employer notice of her intention to take leave. What is disputed is whether Plaintiff can satisfy the fifth element as set forth in Wysong.

Plaintiff argues that she met Wysong's fifth element based on her receipt of the July 29, 2005 poor performance evaluation the day before she was to begin FMLA leave. The Court believes Plaintiff reads Wysong too broadly.

While the Sixth Circuit in Wysong rephrased the fifth element by no longer requiring proof that the employee was denied FMLA leave, that decision must be read in context and in conjunction with the decisions upon which it was based. In Wysong, the issue of FMLA interference arose in the context of a district court's failure to consider potential interference because the complaint spoke in terms of retaliation under the FMLA. The Sixth Circuit easily found that alleging that one is terminated for taking FMLA leave states not only a retaliation claim but also a claim of interference under the FMLA. Plaintiff's underlying theory was that she was terminated for previously having taken FMLA leave. This stated an FMLA interference claim because "[i]f an employer takes an employment action based, in whole or in part, on the fact that the employee took FMLA-protected leave, the employer has denied the employee a benefit to which [s]he is entitled." Wysong, 503 F.3d at 447.

In rephrasing the fifth element, the court in Wysong noted its decision was not in conflict with the holding in Cavin. Like Wysong, the plaintiff in Cavin was terminated. That termination

8

occurred after the plaintiff took two periods of FMLA leave and then was late in submitting certification for a third FMLA leave period. The issue presented on the FMLA interference claim was simply whether the plaintiff provided proper notice of his intention to take FMLA leave. Cavin, 346 F.3d at 720.

The Sixth Circuit in Wysong quoted Bradley in rephrasing the fifth element. As in Wysong and Cavin, the FMLA interference claim arose after plaintiff was terminated from her employment. Evidence in the record indicated the employer may have taken into consideration absences which occurred while plaintiff was on FMLA leave when terminating her under its "no call, no show" policy. Bradley, 322 F.Supp.2d at 946.

Finally, the Sixth Circuit in Wysong string-cited Brenneman v. Medcentral Health Sys., 266 F.3d 412, 422 (6th Cir. 2004) and Pharakhone v. Nissan North America, Inc., 324 F.3d 405, 408 (6th Cir. 2003) for the proposition that employers cannot use the taking of FMLA leave for purposes of hiring, promotion, or disciplinary actions. Here again, both cases dealt with FMLA interference claims resulting from terminations. In Brenneman, plaintiff failed to give his notice that an absence was FMLA-qualifying in a timely fashion which triggered his third absence-related suspension and resulted in his termination. In Pharakhone, plaintiff was terminated after his employer discovered he was working at a restaurant owned by his wife while on FMLA leave in violation of company policy. In affirming the district court's grant of summary judgment, the Sixth Circuit in Pharakhone observed "[i]f the employee cannot show that he was discharged because he took leave – or at least that his taking of leave was a 'negative factor' in the employer's decision to discharge him – he cannot show a violation of the FMLA." Pharakhone, 324 F.3d at 408.

9

The facts in this case are entirely different from those in <u>Wysong</u>, <u>Cavin</u>, <u>Bradley</u>, <u>Brenneman</u>, and <u>Pharakhone</u>. In each of the cited cases, the interference claim arose as a result of termination. Clearly, a termination which (1) either precludes the taking of FMLA leave or (2) results from the taking of FMLA leave, constitute an interference with such leave.

Here, however, Plaintiff's claim hinges upon her receipt of a poor evaluation on the eve of her taking scheduled FMLA leave. Plaintiff took that leave and there is no suggestion that she was ever denied leave to which she was entitled under the FMLA. All that is before the Court is that in this one instance, Plaintiff was handed a poor evaluation contemporaneously with her taking leave. The Court simply cannot conclude that Plaintiff's rights to FMLA leave were interfered with under the facts of this case.

By reviewing the facts in the cases underlying <u>Wysong</u> and by noting that in each case the plaintiff was terminated, the Court is in no way suggesting that the ultimate employment sanction is necessary to support an interference claim under <u>Wysong</u> and the cases upon which it relies. Quite the contrary, <u>Wysong</u> speaks in terms of the employer using the taking of FMLA leave as a negative factor in taking "employment actions such as hiring, promotions or disciplinary action." <u>Wysong</u> 503 F.3d at 447 (internal quotations omitted). <u>Wysong</u> also speaks in terms of an employer taking an action which denies the employee of a benefit to which she is entitled.

Again, the record is devoid of any suggestion that receipt of a negative evaluation by Plaintiff on the eve of her taking FMLA somehow deprived her of a benefit to which she was entitled. She has not made any showing as to how the July 29, 2005 evaluation harmed her employment situation or otherwise affected the terms of her employment. She has not shown that she suffered anything akin to a demotion of a significant change in duties as a result of the negative

10

evaluation. Consequently, the Court concludes that Plaintiff cannot establish an interference claim under the FMLA, and this claim will be dismissed.

### B. Retaliation Claim

The general framework for analyzing a retaliation claim is as follows. Plaintiff must establish a *prima facie* case of retaliation by showing: (1) she engaged in protected activity; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against her, or she was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action. Morris v. Oldham County Fiscal Court, 201 F.3d 784, 791 (6th Cir. 2000)(emphasis omitted). "If and when a plaintiff has established a *prima facie* case, the burden of production of evidence shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for its actions." Id. at 792-93 (citation omitted). "The plaintiff, who bears the burden of persuasion throughout the entire process, then must demonstrate 'that the proffered reason was not the true reason for the employment decision.'" Id. at 793 (citation omitted).[5]

A retaliation case may be proved utilizing direct or indirect evidence. Doucet v. University of Cincinnati, 2007 WL 2445993 at *7 (6th Cir. 2007). The Sixth Circuit has explained that "direct evidence is that evidence which, if believed, *requires* the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 926 (6th Cir. 1999) (emphasis added). Thus, "direct evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the

---

[5]Although the Court in this Memorandum references federal cases construing Title VII, "analysis of claims under the THRA is the same as under Title VII." Gee-Thomas v. Cingular Wireless, 324 F.Supp.2d 875, 881 (M.D. Tenn. 2004).

11

challenged employment action was motivated at least in part by prejudice against members of the protected group." Johnson v. Kroger Co., 319 F.3d 858, 865 (6th Cir. 2003). For example, "a facially discriminatory employment policy or a corporate decision maker's express statement of a desire to remove employees in the protected group is direct evidence of discriminatory intent." Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000).

In this case, Plaintiff asserts that the deposition testimony of Benny R. Goolsby ("Goolsby"), a union representative, provides direct evidence of retaliation. Plaintiff claims Goolsby testified that during the July 29, 2005 meeting when discussing various negative performance factors, Boddie mentioned "something about attendance or taking FMLA leave or taking – being off so much with a child or something." (Docket Entry No. 22 at 4 & 13). There are at least two problems with this assertion.

First, Plaintiff mischaracterizes Goolsby's testimony by suggesting he heard Boddie say something derogatory about Plaintiff utilizing FMLA leave. Goolsby testified he did not remember Boddie complaining about FMLA leave and that any connection between Plaintiff's performance and FMLA was what he "gathered" from Plaintiff herself. Goolsby testified as follows:

> Q. Do you recall if Mr. Boddie was complaining about her being absent due to FMLA leave?
>
> A. He was complaining about her attendance. I do not remember him specifically saying it's because of FMLA leave. But based on what Sandra had told me, that's what I gathered, that he was upset because she was out so much.
>
> Q. Did he make -- when he made statements, was it about her being out so much as you described it?
>
> A. He did not mention FMLA leave or anything. It was attendance.

(Goolsby Depo. at 21).

12

Second, several inferences are required to determine that Boddie retaliated against Plaintiff by giving her a poor evaluation for her having filed a previous EEOC charge and federal complaint. Any reference to FMLA leave says nothing about Plaintiff's previous administrative or court filings. Moreover, and as already pointed out, Goolsby's testimony cannot be read as suggesting that Boddie even mentioned FMLA leave. Further, while Plaintiff received a poor evaluation on July 29, 2005, her attendance was rated satisfactory, suggesting that her taking of FMLA leave was not an issue as far as Boddie was concerned.

Because Plaintiff fails to present direct evidence of retaliation, the Court turns to the indirect method of proving retaliation. Plaintiff claims that retaliation is evidenced by the fact she was subjected to unfair write-ups and reviews, she was required to document and account for her time at work, and she was harassed by the "surprise evaluation" the day before she was to take FMLA leave.

Preliminarily, Plaintiff contends that all of the events about which she complains should be considered as retaliatory, even though most occurred before she filed her charge with the EEOC in 2003. In doing so, she relies upon the inapposite case of Shaefer v. United States Postal Serv., 254 F.2d 741 (S.D. Ohio 2006) where the issue was when retaliation claims had to be filed with the EEOC. The language quoted by Plaintiff from Shaefer about a claim for retaliation stemming from conduct by the employer that occurred prior to filing an EEOC charge relates not to the EEOC charge as the protected activity, but rather is in reference to the EEOC charge as being the actual complaint made regarding retaliatory conduct. In any event, the Sixth Circuit has observed that "retaliation claims, by definition, arise after the filing of the EEOC charge[.]" Ang v. Procter & Gamble Co., 932 F.2d 540, 547 (6th Cir. 1991). Thus, "[t]he decisionmaker's knowledge of the

13

protected activity is an essential element of the *prima facie* case of retaliation." Frazier v. USF Holland, Inc., 2007 WL 2913880 at *5 (6th Cir. 2007).

Because knowledge by the employer is essential to a retaliation claim, all of Plaintiff's claims other than the July 29, 2005 evaluation are time-barred. Regardless, even considering all of the events about which Plaintiff complains, she cannot meet the essential elements of a prima facie indirect case of retaliation because, even assuming she suffered an adverse employment action, she cannot show causation.

Under the Supreme Court's decision in Burlington Northern & Santa Fe Railway Co. v. White, 126 S.Ct. 2405 (2006) to be an "adverse employment action," it is not necessary that the action be some sort of "ultimate employment decision," such as hiring, granting leave, discharging, or demoting. Instead, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 2415 (citations and quotation marks omitted). The Supreme Court then noted that it was "speaking of material adversity," because it "is important to separate significant from trivial harms." Id.

In Burlington Northern, the Supreme Court cautioned that Title VII protects individuals "not from all retaliation" but only from retaliation "that produces an injury or harm." For an injury or harm to be actionable, it must also rise to a requisite "level of seriousness." Requiring that the material action dissuade a reasonable worker from making or supporting a charge of discrimination is necessary "to separate significant from trivial harms" and inconveniences. Burlington Northern, 126 S.Ct. at 2414-15.

14

Under this standard, placing an employee on a performance plan may constitute a materially adverse action. Michael v. Caterpillar Financial Serv. Corp., 496 F.3d 584, 596 (6th Cir. 2007). Additionally, a poor evaluation may also amount to a an adverse employment action. Halfacre v. Home Depot, U.S.A., Inc., 221 Fed. Appx. 424, 432 (6th Cir. 2007).[6]

Nevertheless, to establish a *prima facie* case, Plaintiff must establish a causal connection between her filing a charge or complaint. Nguyen v. City of Cleveland, 229 F.3d 559, 566-67 (6th Cir. 2000). Plaintiff claims causation is established by the temporal proximity between her filing an EEOC charge and/or Complaint in this Court and the adverse employment actions about which she complains.

In Nguyen, the Sixth Circuit noted that "there may be circumstances where evidence of temporal proximity alone would be sufficient to support that inference" of a causal nexus. Id. at 567. Subsequently, the Supreme Court in Clark County School Dist. v. Breeden, 532 U.S. 268, 272 (2001) observed that appellate courts generally allow a plaintiff to establish the causation element of the *prima facie* case in a retaliation case where the temporal proximity between the protected activity and the challenged act is "very close." The Sixth Circuit allows such an inference to be drawn "where the temporal proximity between the protected activity and the adverse employment action is acutely near in time." DiCarlo v. Potter, 358 F.3d 408, 421 (6th Cir. 2004). The outside parameter is generally six months between the protected activity and the adverse employment action. See, Mallory v. Noble Correctional Institute, 45 Fed. Appx. 463, 473 (6th Cir. 2002); Nguyen, 229 F.3d at 567; Parnell v. West, 1997 WL 271751 at *3 (6th Cir. 1997).

---

[6]The Court says that theses actions "may" constitute an adverse employment action because in Michael and Halfacre the Sixth Circuit indicated that these actions may be adverse yet ultimately did not decide the issue.

15

Plaintiff complains about being given "unfair write ups and reviews." However, this complaint stems from a "60 day review" which was imposed on Plaintiff on September 3, 2003. Her filing an EEOC charge could not possibly be the cause of this employment action because she filed her EEOC charge after September 3, 2003.[7]

Plaintiff's primary concerns relate to her receipt of the July 29, 2005 negative performance evaluation and the requirement that she submit "time in motion" forms which was imposed at around the same time. These events were in no way temporal to her having engaged in protected activity as they occurred nearly two years after Plaintiff filed her EEOC charge (October 21, 2003) and more than a year after she filed the Grant suit in this Court.

Because Plaintiff is unable to establish a *prima facie* case of retaliation, Defendant is entitled to judgment. Defendant is also entitled to judgment because, even if it is assumed that Plaintiff could establish a *prima facie* case, Defendant has set forth the reasons for Boddie's negative evaluation of Plaintiff – her poor performance and her failure to follow instructions, which plaintiff cannot show is a lie. Poor performance is a legitimate non-discriminatory reason for an employer's employment action. Abdulnour v. Campbell Supply Co., LLC, 502 F3d 496, 502 (6th Cir. 2007), as is failure to follow a supervisor's instructions. Dachman v. Shalala, 9 Fed. Appx. 186, 190 (4th Cir. 2001).

Once an employer establishes legitimate non-discriminatory reasons for its actions, it is incumbent upon a Plaintiff to establish, by "the preponderance of that evidence that the legitimate

---

[7] For the reasons previously explained, the Court rejects Plaintiff's suggestion that events which occur *prior* to a protected activity can serve as a basis for a retaliation claim.

16

reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Abdulnour, 502 F.3d at 502.  Plaintiff points to three things which she argues show pretext.

First, in his review Boddie wrote that there was no "mention of the status" of the "time in motion" forms Plaintiff was to fill out, whereas in his deposition Boddie stated Plaintiff had earlier told him she was talking with the union about the requirement that she fill out such forms.  However, Plaintiff neglects to mention Boddie later explained in his deposition that what the union had to say about whether Plaintiff should fill the form out had no bearing on Plaintiff being required to meet the deadline he set, and that Plaintiff "never at any point said that, yes, I'll have them to you, yes, they'll be done, yes, I'll start on them."  (Boddie Depo. at 89).  Regardless, and as Defendant aptly observes, even if that statement about the "time in motion" was somehow incomplete, there is no showing that Boddie's remaining concerns about Plaintiff's performance (such as failure to meet deadlines and communicate with management) were not legitimate reasons for her poor evaluation.

Second, Plaintiff asserts pretext based upon Boddie once writing her up for not arriving at work on time when, in fact, an interoffice e-mail showed she was at her desk five minutes before the official start of the workday.  While all of this may be so, this relates to a matter which occurred on September 22, 2003, approximately one month before she filed her EEOC charge and hence is irrelevant to the question of whether an evaluation almost two years later was a lie.

Third and finally, Plaintiff points to a personal Webpage maintained by Boddie on www.blackplanet.com, which he described as a "similar to MySpace for African-Americans." (Boddie Depo. at 153).  On that Webpage, Boddie posted rhetorical questions such as "what is wrong with women these days?" and makes statements such as "Chicks seem to have more issues these days than Jet Magazine, and keep up more drama than daytime television and Jerry Springer

17

combined[.]" While these sentiments may express Boddie's general opinion about certain things, they say absolutely nothing about whether there was a basis for concluding that Plaintiff was not completing her tasks in a timely manner, whether she had problems communicating with management, or whether she was deficient in the workplace in the other areas which Boddie mentions in his June 29, 2005 evaluation.

Because Plaintiff cannot present a *prima facie* case of retaliation and because she cannot show that the stated reasons for the evaluation were a lie, Defendant is entitled to judgment on Plaintiff's retaliation claim.

## IV. CONCLUSION

For the foregoing reasons, Defendant Metropolitan Government of Nashville and Davidson County, Tennessee's Motion for Summary Judgment (Docket Entry No. 16) will be granted and this case will be dismissed. An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE